**In the Matter of Kurtis George KASPAR and, Linda Ann Kaspar, Debtors.**

**BELLCO FIRST FEDERAL CREDIT UNION, Plaintiff–Appellant,**

v.

**Kurtis George KASPAR and Linda Ann Kaspar, Defendants–Appellees.**

**Civil Action No. 95–D–1157.**
**Bankruptcy Action No. 94–20530SBB.**
**Adversary No. 94–1690 DEC.**

United States District Court,
D. Colorado.

Sept. 6, 1996.

Barry Meinster, Denver, CO, for Plaintiff–Appellant.

Glen R. Anstine, Denver, CO, for Defendants–Appellees.

### MEMORANDUM OPINION & ORDER AFFIRMING BANKRUPTCY COURT

DANIEL, Judge.

#### I. *INTRODUCTION*

 This matter is before the Court on Bellco First Federal Credit Union's ("Bellco") appeal of the Bankruptcy Court's Order Granting Partial Summary Judgment, which is incorporated herein by reference.[1] The

---

**1.** This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). I review the Bankruptcy Court's Findings of Fact under the clearly erroneous standard of review and review its Conclusions of Law *de novo*. *In re Herd,* 840 F.2d 757, 759 (10th Cir.1988).

issue on appeal is well defined: namely, whether a telephonically generated credit card loan application, which is reduced to writing by the lender but never signed or otherwise adopted by the applicant, constitutes a "statement in writing" caused to be made or published by the applicant. 11 U.S.C. § 523(a)(2)(B).[2] The parties also agree as to relevant facts, which are contained in the Bankruptcy Court's underlying order.[3]

In short, Bellco seeks a determination that the Kaspars' credit card debt is nondischargeable on account of allegedly false representations made by the Kaspars when they applied for their cards over the phone. In response to the Bellco representative's questions, the Kaspars provided financial information that was input into a computer which in turn was later transformed into an internal "hard copy" document by Bellco. Of significance, the Kaspars never saw the document, let alone knew of its existence. They simply provided information over the phone and subsequently received credit cards. The Bankruptcy Court held as a matter of law that notwithstanding whether the Kaspars in fact made false representations which were relied upon by Bellco in issuing credit, Bellco's claim of nondischargeability fails since there was not a "writing." As discussed below, I agree and affirm.

## II. *DISCUSSION*

The applicable statute in question is 11 U.S.C. § 523(a)(2)(B), which provides as follows:

(a) A discharge ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) *use of a statement in writing*—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

(Emphasis added). Of significance here is the "in writing" requirement, since it is undisputed that the Kaspars never signed, acknowledged, adopted, or even saw the internally generated computer document that purportedly represents the information the Kaspars communicated over the phone to a Bellco representative. 11 U.S.C. § 523(a)(2)(B).

In resolving this question, I note that the commentators and treatises are in general agreement that "[t]o come within the exception of section 523(a)(2)(B), the statement, to be in writing, must have been written by the debtor, signed by the debtor, or the particular writing must have been adopted and used by debtor." 3 *Collier on Bankruptcy* ¶ 523.09[1] (15th ed. 1996); *see also* 3 *Bankruptcy Service* (Lawyers Service) § 27:203, at 233–34 (1995) (cases cited therein); *cf.* H.R.Rep. No. 95–595, 95th Cong., 1st Sess., at 129 (1977), 1978 U.S.Code Cong. & Admin.News 5787, 6090 ("The bill continues the exception to discharge based on a false financial statement *in writing* concerning the debtor's financial condition.") (emphasis added). One commentator has even addressed the specific issue now raised, noting that

[it] presents a difficult problem for those firms that transact business over the phone. For instance, many institutions are accepting loan applications over the

---

**2.** Though Bellco originally asserted claims under both sections (a)(2)(A) and (B), I note that the parties have stipulated to dismissal of the section (a)(2)(A) claims. Accordingly, this appeal resolves the case for all practical purposes.

**3.** The only "fact" which appears in dispute is who initiated the phone contact between the Kaspars and Bellco. The Kaspars claim that Bellco contacted them, though their affidavits acknowledge that they "are not positive of that"

fact. In contrast, Bellco's affidavits are unwavering in asserting that the Kaspars contacted them. Since the Court must construe all evidence in favor of Bellco—the nonmoving party— the Court accepts as true for purposes of summary judgment that the Kaspars contacted Bellco. Fed.R.Civ.P. 56. In its Order Denying Motion to Reconsider Order, the Bankruptcy Court held that this distinction is irrelevant.

phone ... without any prior dealing with the party who is making the application. If the creditor decides to make the loan, relying on the information given, such a loan will be dischargeable even if the creditor took extraordinary steps to verify the information. In enacting the Code, the provisions of 523(a)(2)(A) and (B) were deemed to be mutually exclusive. Because 523(a)(2)(A) specifically excludes oral statements made in regard to the debtor's financial condition, such an over-the-phone application would fall in the gap between the two subsections.

Matthew D. Amhut, *Section 523(a)(2)(B): Exceptions to Discharge for Fraudulently Obtained Loans*, 5 Bankr.Dev.J. 151, 174 n. 28 (1987) (citation omitted).

Similarly, the majority of case law supports the Bankruptcy Court's conclusion. For instance, in *In re Snyder*, 75 B.R. 130, 134 (Bankr.S.D.Ohio 1987), the court held section 523(a)(2)(B) inoperable since "plaintiff cannot rely on the second application which was undisputably not prepared by the defendant as a written financial statement." *See also In re Boice*, 149 B.R. 40, 45 (Bankr. S.D.N.Y.1992) ("Plaintiff must establish that Debtors obtained the extension of credit by the use of a writing."); *In re Van Price*, 123 B.R. 42, 45 (Bankr.N.D.Ill.1991) ("There is no doubt that [creditor] has not stated causes of action under Code section 523(a)(2)(B) for at no time did Price submit a statement in writing respecting his financial condition."); *In re Lowery*, 78 B.R. 613, 615 (M.D.Fla. 1987) (holding that unsigned "loan certificate does not constitute use of a statement in writing under section 523(a)(2)(B)"); *In re Ray*, 51 B.R. 454, 459–60 (Bankr.D.Haw. 1985) (stating that since "[t]here was no evidence of any written document by debtor concerning her financial condition ... the Court finds no cause of action against Debtor under Section 523(a)(2)(B)"); *In re Galligher*, 41 B.R. 410, 412 (Bankr.E.D.Pa.1984) (held section 523(a)(2)(B) inapplicable since document in question "was neither prepared nor signed by" debtor). In most instances where section 523(a)(2)(B) is deemed applicable, the debtor has signed some sort of document. *In re Kelley*, 163 B.R. 27, 35 (E.D.N.Y.1993) (stating that it "is undisputed that the Debt-

ors signed the typewritten loan application ... [and] the signatures ... are sufficient to satisfy the writing requirement"); *In re Anzman*, 73 B.R. 156, 163 (Bankr.D.Colo.1986) (noting that debtor "admits that he prepared the typed and signed personal financial statement presented to [him]").

■ Though it is now generally accepted that a debtor need not sign a document for the writing requirement to be satisfied, *see, e.g., In re Shelton*, 42 B.R. 547, 548 (Bankr. E.D.Mo.1984), it is clear that the debtor must affirm the writing in some respect. That is, as noted above, if the debtor does not draft or sign the writing, he must either use or adopt it. *Collier* ¶ 523.09[1]. The analog to this principle is that mere oral representations, without anything more, cannot constitute a writing under section 523(a)(2)(B). *Engler v. Van Steinburg*, 744 F.2d 1060, 1061 (4th Cir.1984) ("statement must be in writing to bar the debtor's discharge"); *In re Kerbaugh*, 162 B.R. 255, 261 (Bankr.D.N.D.1993) ("An objecting creditor that relies on a debtor's oral misrepresentations of his or her financial wherewithal will not be entitled to nondischargeability determination under section 523(a)(2)(B)."); *In re Panaia*, 61 B.R. 959, 961 (Bankr.D.Mass.1986) (dismissed section 523(a)(2)(B) claim since "debtor's statements, even assuming they were false and although made under oath, were oral"). Since here it is undisputed that the Kaspars did not affirm Bellco's internally generated document in any respect, their oral representations alone cannot satisfy the "in writing" requirement of section 523(a)(2)(B).

■ In concluding as the Bankruptcy Court did that section 523(a)(2)(B) cannot apply on these facts, I note that "[e]xceptions to discharge are construed narrowly, and the burden of proving that a debt falls within a statutory exception is on the party opposing discharge." *In re Black*, 787 F.2d 503, 505 (10th Cir.1986). I also note that the "in writing" requirement is a separate and distinct element of a section 523(a)(2)(B) claim. *In re Stafos*, 666 F.2d 1343, 1346 (10th Cir. 1981); *Anzman*, 73 B.R. at 162–63. That is, the "in writing" requirement is a threshold requirement that must be satisfied before the

four subset requirements of section 523(a)(2)(B) are analyzed.

■ Here, Bellco essentially attempts to satisfy the "in writing" requirement by tying it to section 523(a)(2)(B)(iv), which requires "that the debtor caused [the writing] to be made or published with intent to deceive." In attempting to circumvent the threshold "in writing" requirement, Bellco makes the textual argument that the Kaspars "caused the writing to be made" when they communicated information over the phone. Not only is Bellco's argument excessively textual, it appears that subsection (iv) addresses an instance altogether different than that posed here. As was the case in *Stafos,* 666 F.2d at 1346, subsection (iv) would seem to address the instance where a debtor puts in motion a signed or otherwise affirmed financial statement that is subsequently relied upon by a creditor (i.e. a credit report); *see also Collier* ¶ 523.09[5][a]. However, subsection (iv) cannot act as a substitute for satisfaction of the "in writing" requirement itself.[4] As with all contract formalities, the "in writing" requirement addresses a specific concern. It can only be satisfied by debtors' affirmation of the written document, which did not occur here. A contrary holding would allow a creditor to unilaterally subject an unknowing debtor to section 523(a)(2)(B) exposure. Such a holding not only violates the "in writing" requirement of section 523(a)(2)(B), it also impedes the well-grounded "fresh start" policy of bankruptcy law.

III. *CONCLUSION*

Accordingly, for the reasons discussed above, it is hereby

ORDERED that the Bankruptcy Court's Order Granting Partial Summary Judgment is AFFIRMED.

---

**4.** Though Bellco cites *In re Graham,* 122 B.R. 447, 451 (Bankr.M.D.Fla.1990), for the proposition that the Kaspars' oral representations satisfy the "in writing" requirement since they were inputted into a computer and later reduced to writing, I reject the broad proposition for two reasons: (1) as indicated above, the vast majority of case law states that the debtor must affirm the writing in some respect, which did not take place here; and (2) as the Kaspars correctly note in their brief, *Graham* relies on *In re Roy,* 40 B.R. 452, 454 (Bankr.S.D.Fla.1984), which does not support the *Graham* holding since *Roy* involved a financial statement that was affirmed by debtor and delivered to creditor.