**In re Michael John BUMANN, Debtor.**

**Joseph BOSCH, Plaintiff,**

v.

**Michael John BUMANN, Defendant.**

**Bankruptcy No. 92–30327.**

**Adv. No. 92–7057.**

United States Bankruptcy Court,
D. North Dakota.

Oct. 23, 1992.

Michael Hoffman, Bismarck, N.D., for plaintiff.

Michael J. Bumann, pro se.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The plaintiff, Joseph Bosch (Bosch), commenced the instant adversary proceeding by complaint filed June 22, 1992, seeking to determine the dischargeability of a contingent, unliquidated claim he has against the Debtor/defendant, Michael John Bumann (Bumann). The complaint asserts that while attending an outdoor social function, Bumann willfully and maliciously assaulted Bosch resulting in a nondischargeable claim for injuries under section 523(a)(6) of the United States Bankruptcy Code.

The incident giving rise to the instant adversary proceeding also generated a civil suit in the District Court for Burleigh County, North Dakota, trial of which was scheduled for March 24, 1992, the date Bumann filed for Chapter 7 relief. The bankruptcy filing stayed resolution of the state-venued action and the issues of liability and damages remain unresolved.

Although Bosch has asked this court for a monetary judgment, this court declines, believing it appropriate only to make a determination as to dischargeability and leave it for the state court to determine the extent of Bumann's liability and the amount of the damages sustained by Bosch. As a consequence, this court will, as a part of its judgment, grant the plaintiff, Bosch, relief from stay so that he

might prosecute the state action to conclusion. This court's determination, as enunciated herein, resolves the issue of whether, on the basis of the record before it, Bumann's liability to Bosch (as ultimately determined by the state court) is a nondischargeable claim under section 523(a)(6).

Trial of .this adversary proceeding was conducted on October 20, 1992. From the evidence presented in the joint stipulation of uncontested facts, the court finds the facts, as material, to be as follows:

### Findings of Fact

On the evening of April 16, 1988, Bosch then age twenty along with a friend attended a "spring bash" party being held outdoors at a place called Menoken Grove, Menoken, North Dakota. While en route they had three beers and over the course of the evening Bosch consumed a total of six beers, including the three.

Within a few minutes of arriving at the party, Bosch was approached by Bumann who dropped his coat to the ground and began to yell at Bosch in a loud voice challenging him to fight with such words as, "pussy", "wimp", etc.. The name calling elicited no aggressive response from Bosch, who simply replied, "okay, whatever you say, whatever you say". A couple of bystanders told Bumann there wasn't going to be any fighting and Bosch, along with his friend, Sandi Balough, walked away from Bumann.

Approximately two and one-half hours later Bosch was again approached by Bumann who again confronted him using the same epithets and again challenging him to fight. Again, Bosch declined whereupon Bumann struck Bosch in the face causing Bosch to fall backwards over a picnic table. Bumann advanced landing on top of Bosch all the while throwing punches to his face. The two began to wrestle on the ground with Bosch getting Bumann into a headlock and then landing several punches of his own. Bumann broke away and both recovered their footing. At this point they were several feet from each other with bystanders between them trying to break it up. Neither removed themselves from the scene. At this point, Bumann managed to land a solid punch to Bosch's face which, according to witnesses, drew blood and dazed him for a moment. According to witnesses, this was a blind sided blow unexpected by Bosch, who was just standing there. Bosch apparently was able to throw another blow of his own but was hit a few more times by Bumann and the altercation was over.

With Bosch apparently hurt, his friends escorted him out of the party area and took him to St. Alexius Hospital in Bismarck where his face was x-rayed and stitched. His injuries included a laceration of the left eyebrow area, a swollen left cheek, a zygoma fracture and an orbital floor blow out fracture of the left side. Surgery was done but Bosch yet suffers from reduced peripheral vision.[1]

Bumann did not offer any testimony on his own behalf. All persons testifying were emphatic in their belief that Bosch exhibited no aggressive behavior of his own and in fact, declined to fight on both confrontational occasions. All were in agreement that Bumann was the aggressor and would have accosted Bosch regardless if he had attempted to walk away from the scene after the two had been separated following the wrestling episode. As one witness testified, with a crowd closed in on the two, there was no obvious course of retreat. Although both had something to drink, the evidence does not establish that either was legally intoxicated or under the influence.

### Conclusions of Law

■ The relevant Code section is section 523(a)(6) which in relevant part provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

and is left to the state court.

---

**1.** The exact nature and extent of the injuries sustained by Bosch was not developed at trial

(6) for willful and malicious injury by the debtor to another entity or the property of another entity.

Although the Code itself does not define the terms, "willful and malicious", in this circuit it is established law that each constitutes a separate element with separate characteristics. To prevail, the elements of willfulness and maliciousness must each be established by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Willfulness or a willful state of mind is demonstrated by evidence that the debtor acted deliberately and intentionally as opposed to merely negligently or recklessly. *In re Miera*, 926 F.2d 741 (8th Cir.1991); *In re Long*, 774 F.2d 875, 880–81 (8th Cir.1985). The cited cases define malice as a heightened level of conduct beyond mere willfulness. For there to be malice, the offending conduct must be by its nature certain or almost certain to cause harm and must be targeted at the creditor. *In re Long, Id.* at 881.

 Assault is an intentional tort which under both the civil and criminal laws of North Dakota is defined as any act by which a person willfully causes bodily injury to another human being. *See* N.D.Cent.Code § 12.1–17–01 *et seq.;* North Dakota Pattern Jury Instructions No. 4E and 2400.[2] Debts which are based upon traditional intentional torts such as assault and battery are generally regarded by bankruptcy courts as being nondischargeable. *In re Pokorny*, 143 B.R. 179 (Bankr. N.D.Ill.1992); *In re Miera*, 104 B.R. 150 (Bankr.Minn.1989); *In re Price*, 123 B.R. 42 (Bankr.N.D.Ill.1991); *In re Johnson*, 109 B.R. 885 (Bankr.N.D.Ind.1989). In the case at bar there is no question but what Bumann was intent on provoking a fight with Bosch and when words alone were insufficient he struck him with sufficient force to send Bosch sprawling. Up to that point Bosch was forced on two occasions to reject Bumann's hostile advances. Bumann, in provoking Bosch and then, without any justifiable provocation on Bosch's part, proceeding to strike him with substantial force, was acting with the deliberate intent to cause Bosch bodily harm. There could be no other objective or consequence of striking a non-threatening individual.

 Bumann, who presented a very erudite pro se defense, argues that once he and Bosch were engaged in the ground scuffling they were engaged in mutual combat which takes the entire incident out of the category of assault. This is a novel argument belied by the facts. At no time did Bosch indicate he wanted to fight, indeed, on two occasions he backed away from Bumann's verbal provocations only to be hit in the face on the latter occasion. Bosch did not make an independent, unprovoked decision to wrestle with Bumann or hold him in a headlock. This act was spawned by having himself been struck to the ground by Bumann who landed on him with fists flying. Under the law a person may use whatever force he believed necessary at the time to repel an attack or protect himself from wrongful injury. *Jahner v. Jacob*, 233 N.W.2d 791, 795 (N.D. 1975), *see also* North Dakota Pattern Jury Instructions No. 490. From the evidence the court concludes that Bosch's actions were at all times defensive in nature and that had he not been repeatedly accosted by Bumann he would not himself have struck Bumann at all. Bumann was always the constant instigator and aggressor.

*Conclusion*

Based on the circumstances of the altercation as developed by the evidence presented, the court concludes that the plaintiff, Joseph Bosch, has established by a preponderance of the evidence that the Debtor/defendant, Michael John Bumann, willfully and maliciously assaulted him. Accordingly, should the state court find the Debtor/defendant, Michael John Bumann, liable for the injuries sustained and award

---

**2.** The record does not reveal whether any criminal charges were brought as a result of the altercation.

the plaintiff, Joseph Bosch, damages (whether compensatory or punitive), those damages will constitute a nondischargeable debt under section 523(a)(6) of the United States Bankruptcy Code.

The plaintiff, Joseph Bosch, is hereby granted relief from stay in order to prosecute his pending state case to conclusion.

JUDGMENT MAY BE ENTERED ACCORDINGLY.

SO ORDERED.