In re Byron Thomas KELLY a/k/a
Byron T. Kelly, M.D., Debtor.

Renee Thompson, Plaintiff,

v.

Byron Thomas Kelly a/k/a Byron
T. Kelly, M.D., Defendant.

Bankruptcy No. 99–4024–172.
Adversary No. 98–51743–172.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Aug. 3, 1999.

Robert J. Blackwell, Blackwell & Associates, P.C., O'Fallon, MO, trustee.

Janice Valdez, Timothy M. Bosslet, Kramer & Frank, P.C., St. Louis, MO, for Plaintiff.

Veronica D. Joyner, Williams, Goins, Graham, Joyner & Associates, St. Louis, MO, for Defendant.

## *MEMORANDUM*

JAMES J. BARTA, Chief Judge.

The matter being determined here is the motion of Renee Thompson ("Plaintiff") for summary judgment on her Adversary Complaint against Byron Thomas Kelly ("Debtor"). In her Complaint, the Plaintiff has asked the Court to determine that the debt owed to her that is based upon a non-bankruptcy court judgment, is not dischargeable as being a debt for a willful and malicious injury under 11 U.S.C. § 523(a)(6). The Debtor filed an answer to the Complaint that denied the substantive allegations of the Complaint, and raised several affirmative defenses.

At the pretrial hearing in this matter on April 27, 1999, the Parties' Counsel agreed that the Plaintiff's motion for summary judgment was to be filed not later than May 21, 1999; that the Debtor's response was to be filed not later than June 4, 1999; that the Plaintiff's reply was to be filed not later than June 18, 1999; and that the matter was continued to July 20, 1999 for a continued pretrial hearing and any other requests. The Plaintiff timely filed her motion; however, the Debtor did not file a response. On June 15, 1999, the Plaintiff filed a brief addendum to her motion, reporting that no response had been received from or on behalf of the Debtor. The Plaintiff appeared at the continued pretrial hearing in the Bankruptcy Court on July 20, 1999, and announced that no further pleadings had been received from

the Debtor. No other request was presented by or on behalf of the Debtor. The Court announced that the matter would be taken under submission and determined on consideration of the record as a whole.

This is a core proceeding pursuant to Section 157(b)(2)(*l*) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri.

By an Order dated June 18, 1998, the Plaintiff received a judgment against the Debtor and Byron T. Kelly, M.D., P.C., jointly and severely, in the amount of $5,000.00 as actual damages for her pain, suffering and mental anguish, and the additional amount of $35,000.00 in punitive damages. The judgment was entered by the Superior Court of Fulton County, Georgia on the Plaintiff's multi-count Complaint, after the Debtor's answer and counterclaim had been stricken for the Debtor's failure to attend properly-noticed depositions. **Plaintiff's Exhibit 8.** In its Final Order and Judgment on Damages, the Georgia Court found that during the course of an employment relationship, the Debtor had sexually harassed the Plaintiff, subjected her to lewd and inappropriate behavior, and had committed sexual battery against her. **Plaintiff's Exhibit 8.** The Georgia Court entered its final order and judgment in the amounts set forth above on June 19, 1998. No appeal was taken. The Debtor filed the voluntary Petition for Relief under Chapter 7 in this case on October 27, 1998. The Plaintiff has requested that the judgment amount be determined to be not dischargeable in this case.

In the Georgia court proceeding, the Plaintiff appeared in person and by Counsel at the hearing on June 17, 1998, and provided testimony and other evidence in support of the allegations in her complaint. In the final order and judgment after the hearing, the Georgia Court found that the allegations in the Plaintiff's complaint were deemed admitted, and that "Defendant Dr. Kelly has committed sexual battery against the plaintiff, having fondled and touched her, which touches were" unsolicited by the Plaintiff. **Plaintiff's Exhibit 8, pgs. 1–2.**

A movant will prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In opposing a Motion for Summary Judgment, the other party may not simply rest upon mere allegations or denials of the pleadings. *Id.* The motion must be granted if the Court is satisfied that no real factual controversy is present. *Lyons v. Board of Education,* 523 F.2d 340, 347 (8th Cir.1975).

Section 523(a)(6) of the Bankruptcy Code provides that an individual debtor is not discharged from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). The Debtor was found liable by the Georgia court for injury to the Plaintiff as the result of sexual harassment and sexual battery actions that are alleged to be intentional torts. The Debtor was also assessed punitive damages by the Georgia court, which, the Plaintiff argues, requires a finding by the court that the Debtor's acts were willful and malicious.

In a federal court, relitigation of issues previously determined in a state court is barred by the doctrine of collateral estoppel. *In re Miera,* 926 F.2d 741, 743 (8th Cir.1991).

> We look to the substantive law of the forum state in applying the collateral estoppel doctrine giving a state court judgment preclusive effect if a court in that state would do so.

*In re Scarborough,* 171 F.3d 638, 641 (8th Cir.1999); *Matter of Holt,* 173 B.R. 806, 813 (Bankr.M.D.Ga.1994).

■ In Georgia, the elements for the application of the doctrine of issue preclusion are:

(1) there must exist an identity of issues between the first and second actions;

(2) the duplicated issue must have been actually and necessarily litigated in the prior court proceeding;

(3) the determination of the issue must have been essential to the prior judgment;

(4) and the party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding.

*Matter of Pope,* 209 B.R. 1015, 1017 (Bankr.N.D.Ga.1997).

The Court finds and concludes that the issues of whether the Debtor sexually harassed and sexually battered Plaintiff were actually and necessarily litigated in the state court action, and that the determination of the issues was essential to the prior judgment. The Court must then determine if there is an identity of issues between the Georgia court proceeding and this Adversary Proceeding, and if Debtor had a full and fair opportunity to litigate in the state proceeding.

■ The first issue is whether sexual harassment and sexual battery are intentional torts that are "willful" and "malicious" acts that are nondischargeable as a matter of law. In the Eighth Circuit, "willful" and "malicious" are separate elements of the Section 523(a)(6) exception to discharge. *In re Halverson,* 226 B.R. 22, 26 (Bankr.D.Minn.1998). The Supreme Court has clarified the definition of willfulness by stating that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of Section 523(a)(6)." *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). "[T]he (a)(6) formulation triggers

... the category 'intentional torts,' as distinguished from negligent or reckless torts." *Id.* affirming the Eighth Circuit's opinion in *In re Geiger,* 113 F.3d 848, 852 (8th Cir.1997).

■ Intentional torts constitute a "legal category" of personal injury that is based on "the consequences of an act rather than the act itself." *See Geiger,* 113 F.3d at 852, *citing Restatement (Second) of Torts* § 8A, Comment a, at 15 (1965). An intentional tort requires that the actor "desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from [his act]." *Id.* Debts that are based upon traditional intentional torts such as assault and battery are generally regarded by bankruptcy courts as being nondischargeable. *In re Bumann,* 147 B.R. 44, 47 (Bankr.D.N.D.1992), *citing In re Miera,* 104 B.R. 150 (Bankr.D.Minn.1989).

Under Georgia law,

A person commits the offense of sexual battery when he intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person.

Ga.Code Ann. § 16–6–22.1(b) (1981).

The Georgia court specifically found that the Debtor had committed sexual battery against the Plaintiff. **Plaintiff's Exhibit 8.**

■ The Supreme Court has stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998). The language in *Kawaauhau* indicates that the type of conduct justifying denial of a debtor's discharge under Section 523(a)(6) requires the same type of intentional conduct that would give rise to liability for an ordinary intentional tort. *In re Chapman,* 228 B.R. 899, 907 (Bankr.N.D.Ohio 1998).

The Court has determined that the Debtor committed intentional torts against Plaintiff. Therefore, the Court finds and concludes that the Debtor's conduct was willful. *In re Halverson*, 226 B.R. 22, 29 (Bankr.D.Minn.1998).

In the Eighth Circuit, "malicious," for the purposes of Section 523(a)(6), means that the debtor targeted the creditor to suffer the harm resulting from the debtor's intentional, tortious act. *In re Halverson*, 226 B.R. at 26. "An injury is malicious when the debtor intended to harm the creditor at least in the sense that the debtor's tortious conduct was certain or almost certain to cause harm." *Id., citing In re Waugh*, 95 F.3d 706, 711 (8th Cir.1996). A debtor must have intended the injury (willful) and he must also have intended the harm (malicious). *Id.* at 27.

"Malice, or intent to harm, in a sexual intentional tort is self-evident, either because the tortfeasor knows his conduct is certain or almost certain to cause harm, or because he should know and therefore the intent is inferred as a matter of law." *In re Halverson*, 226 B.R. at 30, citing *In re Miera*, supra.

In the Eighth Circuit, malice in the sense intended in Section 523(a)(6) may be evidenced by conduct which is "targeted at the creditor . . ., at least in the sense that the conduct is certain or almost certain to cause . . . harm." *In re Miera*, 104 B.R. 150, 159 (Bankr.D.Minn. 1989), *quoting In re Long*, 774 F.2d 875, 881 (8th Cir.1985). "The act, therefore, may by its very nature bespeak the 'intent to cause harm that constitutes malice under § 523(a)(6)'." *Id.* The Georgia court judgment for actual damages therefore is based upon a willful and malicious injury by the Debtor.

The Georgia court also assessed punitive damages against the Debtor. Under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing

evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Ga.Code Ann. § 51–12–5.1 (1981). "Absent wilful misconduct, malice, fraud, wantonness or oppression, there can be no recovery of punitive damages." *Moon v. Georgia Power Company*, 127 Ga.App. 524, 194 S.E.2d 348, 351 (1972).

Furthermore, in the Eighth Circuit, where the compensatory and punitive damage awards are based on the same underlying conduct, and the judgment for compensatory damages is nondischargeable because it is based on willful and malicious injury to another, the punitive damages award is likewise nondischargeable.

Finally, the Debtor has argued that he did not have a full and fair opportunity to litigate the Georgia court action. The issue is not whether the party to the prior proceeding offered all of the evidence it proposed to offer, but whether the party had an opportunity to do so. *See Buckley v. Buckley*, 889 S.W.2d 175, 178 (Mo.Ct. App.1994).

In the matter being considered here, the Debtor filed an answer and counterclaim in the Georgia court litigation (**Plaintiff's Exhibit 2**). The Debtor/Defendant was represented by two different attorneys and terminated his representation by both of those attorneys (**Plaintiff's Exhibit 4**). The Debtor filed responses to Plaintiff's interrogatories (**Plaintiff's Exhibit 3**). The Debtor received notice of each step of the suit, including the attempts to depose the Debtor and the hearing on the Motion for Sanctions. As a result of the Debtor's disregard of the discovery process, his response was stricken by the State Court and all of the Plaintiff's allegations were deemed to be admitted. It was Debtor's decision to refuse to appear for deposition, to refuse to attend

**162**

court hearings, and to leave the State of Georgia prior to the trial in the state court. The Debtor had ample opportunity to litigate the state court action, chose not to appear at hearings, and chose not to appeal the state court judgment. The Debtor's election to disregard the judicial process does not prevent the Bankruptcy Court from determining that, in fact, the Debtor had a full and fair opportunity to litigate the issues of sexual harassment, sexual battery and emotional distress in the state court proceeding. *In re Mironuck*, 156 B.R. 33, 35 (Bankr.E.D.Mo. 1993).

The Plaintiff has satisfied the elements necessary for the application of the doctrine of collateral estoppel. Based upon a review of the Georgia court's orders, the transcripts of the hearings before the Georgia court, the pleadings in the Georgia court proceeding, the various exhibits attached to the documents in the Georgia court proceeding, and the record as a whole, the Court has determined that relitigation in the Federal court is barred by the doctrine of collateral estoppel, and that the judgment for actual damages in the amount of $5,000.00 is based upon a willful and malicious injury by the Debtor to the Plaintiff. On consideration of the record as a whole, the Court further finds and concludes that relitigation in the Federal court of the issues concerning punitive damages is barred by the doctrine of collateral estoppel, and that the judgment for punitive damages in the amount of $35,000.00 is based upon the Georgia court's determination that the Debtor's behavior toward the Plaintiff was willful and malicious and resulted in injury to the Plaintiff. The Georgia court determinations are binding upon the Bankruptcy Court in this proceeding.

Therefore, the Court finds and concludes that the pleadings, the testimony, the answers to interrogatories, the admissions on file and the affidavits show that there is no genuine issue as to any material fact, and that the Plaintiff is entitled to a judgment as a matter of law. By a separate order, the debt owed by the Debtor to the Plaintiff is determined to be not dischargeable under Section 523(a)(6) in this Chapter 7 case.